UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CLARY DOSS, JR.,

     Petitioner,     Case Number: 01-10382-BC
                Honorable David M. Lawson

v.

SHERRY L. BURT,

     Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

  The petitioner, Clary Doss, Jr., currently incarcerated at the Newberry Correctional Facility in Newberry, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner was convicted in 1995 of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), and armed robbery, Mich. Comp. Laws § 750.529.  He received a mandatory life sentence for the felony murder conviction and a prison term of ten to twenty-five years for the armed robbery conviction; the robbery conviction was later reversed and the robbery sentence vacated.  The petitioner argues that he is in custody in violation of the Constitution because his trial counsel was ineffective; the jury was not properly instructed; the prosecutor engaged in misconduct; the evidence presented at trial was insufficient to support the verdict; the trial court erroneously admitted the petitioner's involuntary confession; he was improperly arrested and detained without a warrant; and the trial court did not have subject-matter jurisdiction over his case.  The respondent contends that some of the petitioner's arguments are without merit and others are procedurally defaulted.  The Court agrees and will deny the petition.

I.

The petitioner was tried with his co-defendant, Michael Little, before separate juries in the Recorder's Court of the City of Detroit, Michigan. The facts leading to these convictions have been summarized by the Michigan Court of Appeals in the following manner:

> Defendants robbed and murdered Leawann Coles after ensuring that she was home alone with her young son. Defendant Little knew both Mrs. Coles and her husband Terrance, a drug dealer. Defendant Little arranged to sell some stolen rifles to Mr. Coles and to drop them off at the Coles home while Mr. Coles was out. Defendants made up a fake package of guns and tricked Mrs. Coles into letting them into the house. Once inside the house, one defendant held Mrs. Coles at gunpoint while the other searched through the house for things to steal. Defendants stole heroin, money, and other items from the house. Before leaving the house, one defendant shot Mrs. Coles once in the chest and three times in the head from close range. Following their arrests, each defendant gave statements containing similar versions of the events that took place. However, each defendant accused the other of being the one who shot and killed Mrs. Coles. Neither defendant admitted that they had planned an armed robbery. Instead, both maintained that they planned to have one man distract Mrs. Coles while the other grabbed drugs and money from the kitchen, and claimed surprise when the other perpetrator pulled out a gun.
>
> Both defendants moved to suppress their statements to the police. The trial court denied the motions. Each defendant's statement was admitted against him at trial.

*People v. Doss*, No. 188066, slip op. at 2 (Mich. Ct. App. Feb. 13, 1998). On January 20, 1995, the petitioner was found guilty of first-degree felony murder and armed robbery. The trial court sentenced the petitioner to life in prison for the murder conviction and to a term of ten to twenty-five years for the armed robbery.

The petitioner subsequently filed a motion for new trial and received a post-conviction hearing. The petitioner's counsel requested a hearing on the issue of ineffective assistance of counsel for counsel's failure to raise the fact that the petitioner was experiencing heroin withdrawal during his questioning by police; counsel's failure to object to prosecutorial misconduct and improper jury instructions; and the court's use of the "struck jury method." *See generally People*

-2-

*v. Ginther*, 390 Mich. 436, 443-44 (1973) (holding that "[a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts"). The petitioner's appellate counsel asked the court for permission to question the petitioner's trial counsel at his rehabilitation facility.

The court ruled that the testimony of trial counsel was not necessary because the petitioner's testimony at the post-conviction hearing was very similar to his testimony at his pretrial *Walker* hearing. *See generally People v. Walker*, 374 Mich. 331, 132 N.W.2d 159 (1965) (initiating a procedure for pretrial hearings, now known as "*Walker* hearings," to determine whether a confession obtained during custodial interrogation may be deemed unconstitutional on the grounds that the confession was involuntary or the detainee was not advised of his rights under *Miranda*). The court noted that she had heard nothing at the post-conviction hearing to indicate that the decision not to introduce evidence of the petitioner's heroin addiction was anything other than trial strategy. (Post-conviction Tr., 11/9/1995, at 29). In ruling on the motion for new trial, the trial court vacated the petitioner's armed robbery conviction on double jeopardy grounds and denied relief on the other issues. *People v. Doss*, No. 94-8342 (Recorder's Ct. Jan. 26, 1996).

The petitioner raised the first five habeas claims listed below in the Michigan Court of Appeals on direct appeal. The court of appeals affirmed the petitioner's first-degree murder conviction in an unpublished *per curiam* opinion. *People v. Doss*, No. 188066 (Mich. Ct. App. Feb. 13, 1998). The petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court. On December 30, 1998, the state supreme court denied leave to appeal because it

-3-

was not persuaded that the questions presented should be reviewed.  *People v. Doss*, 459 Mich. 929, 615 N.W.2d 735 (1998).

On or about November 17, 1999, the petitioner filed a motion for relief from judgment.  The trial court denied the motion after concluding that the petitioner's claim lacked merit.  *See People v. Doss*, No. 94-008342 (3d Judicial Cir. Ct. Sept. 22, 2000).  The petitioner raised his sixth and seventh habeas claims in an application for leave to appeal the trial court's decision.  The Michigan Court of Appeals denied the delayed application for leave to appeal on the ground that the petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Doss*, No. 230461 (Mich. Ct. App. Apr. 27, 2001).  On November 30, 2001, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Doss*, 465 Mich. 913, 636 N.W.2d 526 (2001).

The petitioner filed his *pro se* habeas corpus petition on December 21, 2001.  He presents his grounds for relief as follows:

I.      Was Petitioner deprived of his constitutional right to effective assistance of counsel where his trial attorney failed to elicit critical evidence at a pretrial hearing and during the trial, regarding the effects that heroin withdrawal had on the voluntariness of Petitioners's statement, and by defense counsel's failure to enter the appropriate objections during trial?

   A.      Failure to elicit evidence to show that Petitioner's statement to the police was made under coercive circumstances.

   B.      Failure to object to improper jury instructions and to prejudicial prosecutorial misconduct

II.     Was Petitioner deprived of his constitutional right to a properly charged jury and to due process of the law when the trial court failed to instruct *sua sponte* on aiding and abetting, by instructing the jury prior to deliberation that no testimony will be read back to them, and by refusing to instruct the jury on larceny by trick?

-4-

     A.     Failing to instruct, *sua sponte*, on aiding and abetting and mere presence.

     B.     Refusing to read back testimony to the jury.

     C.     Refusing to instruct the jury on larceny by trickery.

III.     Did the prosecutor engage in instances of improper and highly prejudicial misconduct during the trial, thereby depriving Petitioner of his right to due process of the law as guaranteed under state and federal constitutional law?

     A.     Arguing that Petitioner had reason to lie

     B.     Arguing facts not in evidence

     C.     Misstating the law to dilute the burden of proof

     D.     Vouching for the case

     E.     Violating the *Bruton* rule

IV.     Was Petitioner deprived of his constitutional right to due process of the law where the evidence was insufficient to convict him of first-degree felony murder and since a rational [trier] of fact could not have found that the necessary element[s] were proven beyond a reasonable doubt?

V.     Did the trial court commit reversible error when it failed to suppress Petitioner's statement to the police after being presented with relevant facts demonstrating that Petitioner's statement was not the product of free will, was made prior to being advised of his *Miranda* rights, and influenced by a false promise made by the police?

VI.     Was Petitioner deprived of his constitutional right to due process of the law where the police unreasonably delayed the arraignment process for the sole purpose of extracting an incriminating statement from Petitioner to justify the arrest?

VII.     Does Petitioner's constitutional claim fall within the requirements of MCR 6.508, which articulates the procedures for obtaining post-appeal relief, since the rule specifically permits jurisdictionally-based challenges of judicial proceedings such as this matter involves and

> where the failure to raise the claim on direct appellate review
> deprived Petitioner of his right to effective assistance of appellate
> counsel and due process of the law?

The respondent contends in an answer to the habeas petition that the petitioner's first five claims
lack merit and the last two are procedurally defaulted.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.
L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this
habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).
That Act "circumscribe[d]" the standard of review federal courts must apply when considering
applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective
assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a
petitioner's claims unless the state court's decision was contrary to or involved an unreasonable
application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.
1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's
application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21

-6-

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this

Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)

("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

      The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

      The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court

> concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### A.

The petitioner's first claim is that he was deprived of his right to effective assistance of counsel by his trial attorney's failure to elicit certain evidence and make appropriate objections at trial. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient

-8-

performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Although both elements of the test must be satisfied before a constitutional violation can be found, a court need not analyze the competence element if the petitioner fails to show prejudice. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

1.

The petitioner claims that his trial attorney should have elicited evidence at a pretrial hearing and at trial that he made his statement to the police under coercive circumstances. The petitioner contends that his statement was not voluntarily given because he was experiencing withdrawal symptoms associated with heroin addiction at the time; because the police promised him that he would not be charged with a crime if he made a statement; and because the police did not advise him of his constitutional rights until after he made the statement. The record of the pretrial *Walker* hearing discloses that the trial court in fact heard the petitioner's claims that he was told that he would not be charged with a crime if he made a statement and that he was not advised of his constitutional rights, and the court found the petitioner's testimony to be "wholly incredible, self-serving and not at all worthy of belief." Pretrial Tr., 12/9/1994, at 50. On the motion for new trial, the trial court held that counsel's failure to raise the issue of the petitioner's drug addiction at trial was sound trial strategy because the information could prejudice the petitioner in the minds of the jury. The Michigan Court of Appeals concluded on review of the petitioner's claim that nothing in the record indicated that trial counsel made a serious error or that the asserted errors resulted in prejudice to the petitioner's case. The Court agrees with that assessment.

A review of the record reveals that defense counsel questioned the petitioner at the pretrial hearing about whether he was intoxicated during the interview with police and whether the petitioner was advised of his constitutional rights before being interviewed. Defense counsel also elicited testimony concerning what prompted the petitioner to admit involvement in the crime. At trial, defense counsel gave the petitioner ample opportunity to explain in narrative fashion the circumstances surrounding his statement to the police. Trial counsel elicited sufficient testimony from the petitioner concerning the circumstances of the police interview.

Sergeant William Petersen testified at the pretrial hearing that the petitioner appeared relatively healthy during the police interview, that he did not appear intoxicated or under the influence of narcotics, and that he had no difficulty with his train of thought. Petersen also testified that the petitioner exhibited no particular resistence during the interview. The petitioner had said that he understood his constitutional rights, which were administered to him at the beginning of the interview, and he initialed each constitutional right on the standard *Miranda* form, indicating that he had read and understood the right. Sergeant Petersen said that he made no promises to the petitioner to elicit his statement.

Because the trial court found Sergeant Petersen's testimony to be wholly credible, the trial court likely would not have found the petitioner's statement involuntary even if defense counsel had elicited additional information from the petitioner regarding the circumstances of his statement to the police. The jury likely would not have been persuaded that the statement was involuntary had defense counsel elicited more information from the petitioner at trial because the jury was informed that the petitioner signed a written waiver of his right to remain silent and other constitutional rights.

-10-

Consequently, even if trial counsel's performance was deficient, the petitioner was not prejudiced by his attorney's alleged deficiency.

Furthermore, counsel was not deficient for failing to elicit testimony that the statement was involuntary because the petitioner was experiencing withdrawal symptoms. At the pretrial *Walker* hearing, the petitioner testified that he was intoxicated at the time of his interrogation because he had been drinking alcohol and taking heroin. At the post-conviction hearing, the petitioner claimed that he was experiencing heroin withdrawal at the time of the interrogation. Counsel's performance cannot be said to be deficient where he failed to elicit conflicting testimony from the petitioner. Moreover, the prosecution's theory was that the petitioner and his co-defendant set about to rob a drug dealer – a dealer in heroin – to steal money and drugs. Defense counsel's decision to refrain from emphasizing the petitioner's heroin use was a reasonable strategic choice.

2.

The petitioner also claims that counsel was ineffective for failing to object to improper jury instructions and prosecutorial misconduct during the course of the trial.

The prosecutor's theory was that the petitioner aided and abetted Michael Little in the murder of Leawann Coles during an armed robbery. The petitioner claims that his attorney should have objected to the trial court's failure to instruct the jury *sua sponte* on aiding and abetting. The Michigan Court of Appeals held that "[a]ny error because of the lack of an aiding and abetting instruction was of benefit to the defendants rather than the prosecutor." *People v. Doss*, No. 188066, slip op. at 2 (Mich. Ct. App. Feb. 13, 1998). The Court agrees that the trial court's failure to instruct the jurors on aiding and abetting worked to the petitioner's advantage because it eliminated one

-11-

theory of liability.  It was reasonable trial strategy not to object to the absence of a jury instruction on aiding and abetting.

The petitioner asserts that his attorney also should have objected when the prosecutor said that the petitioner "had a reason to lie" and that the petitioner's testimony was a "bunch of junk." Tr. III, at 612-13.  In its ruling on the motion for new trial, the trial court found that objections had not been necessary because the prosecution did not commit misconduct.  Because the petitioner testified in his own defense, the prosecutor was entitled to argue that the petitioner's testimony was not credible and emphasize discrepancies in the evidence, although the prosecutor may not express a personal opinion as to the witness's credibility.  *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999).  The prosecutor's remarks were proper in the context of her argument that the petitioner was old enough to know he should not sign a false statement and fatigue was not enough to make him sign a false statement.  Defense counsel's performance was not objectively unreasonable for failing to object to a proper argument.

The Court concludes that defense counsel's performance was not deficient and that the alleged deficiencies did not prejudice the defense.  Therefore, the state court's conclusion that the petitioner was not deprived of effective assistance of counsel was objectively reasonable, and the petitioner has no right to habeas relief on the basis of his first claim.

### B.

The petitioner's second claim is that he was deprived of his right to a properly charged jury and due process of law because the trial court (1) informed the jury that no testimony would be read back to them and (2) failed to instruct *sua sponte* on aiding and abetting and larceny by trick.  The first part of this claim is not supported by the record.  The trial court said during *voir dire* that,

-12-

although the court reporter was recording everything, the transcripts would not be immediately available during the jurors' deliberations. At no point in the trial did the trial court refuse to read back any testimony; nor does the record indicate that the jurors asked to have any testimony read back to them.

The trial court's failure to instruct the jury on aiding and abetting did not deprive the petitioner of due process. As the Michigan Court of Appeals explained, "neither defendant requested the instructions or objected to their omission," and "[a]ny error because of the lack of an aiding and abetting instruction was of benefit to the defendants rather than the prosecutor. . . ." *People v. Doss*, No. 188066, slip op. at 2. This decision was not objectively unreasonable.

Nor was the petitioner entitled to an instruction on larceny by trick. The Supreme Court has declined to decide whether the Due Process Clause requires state courts to give jury instructions on lesser-included offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (holding that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a verdict on a lesser included non-capital offense that would have been supported by the evidence). Although in *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Court ruled that a capital defendant is entitled to a lesser included offense instruction when there is evidence to support it, more recently, the Supreme Court held that state courts are not constitutionally required to instruct juries in capital cases on crimes that are not lesser included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998).

The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-

-13-

97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003).  Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser-included offense, *see Hopkins*, 524 U.S. at 90-91, and, by definition, cognate offenses such as larceny by trick in this case do not meet the definition of lesser-included offenses because they are "related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." *People v. Bailey*, 451 Mich. 657, 668, 549 N.W.2d 325 (1996) (quoting *People v. Jones*, 395 Mich. 379, 387, 236 N.W.2d 461 (1975); *see also United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001).

There are, no doubt, some cases in which the failure to give a properly requested instruction informing the jury of the possibility of guilt of a lesser included offense may deprive the defendant of the right to present a defense.  Enforcing state law rules under such circumstances could result in the denial of constitutional rights.  *Cf. Rock v. Arkansas*, 483 U.S. 44 (1987); *Chambers v. Mississippi*, 410 U.S. 284 (1973).  The petitioner has not presented such a case here on the present record, however.  In Michigan, "larceny by trick is not a lesser included offense of armed robbery" because  "[t]he offense of armed robbery contains no element of trick or fraudulent contrivances, and, thus, cannot have larceny by trick as a lesser included offense." *People v. Styles*, 61 Mich. App. 532, 534, 535, 233 N.W.2d 70, 71, 72 (1975).  In affirming Doss's conviction, the court of appeals explained:

> Larceny by trick was not a cognate lesser included offense to defendants' crime because there was absolutely no evidence that they took the stolen property by means of fraudulent contrivances rather than by threat and force.  It was unnecessary to instruct the jury regarding larceny by trick. [Citations omitted.]  The trial court did give instructions regarding larceny in a building, but refused to instruct the jury regarding attempted larceny in a building.

-14-

*People v. Doss*, No. 188066, slip op. at 2-3.  The decision that the crime of larceny by trick was not a lesser included offense of the crime of armed robbery under Michigan law is a determination entitled to deference on habeas review, since state courts are the final arbiters of state law.  *See Bradshaw v. Richey*, __ U.S. __, __, 126 S. Ct. 602, 604 (2005); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

The petitioner also argues that an instruction on larceny by trick was warranted by the theory of the defense that the petitioner and his co-defendant only meant to trick the victim and distract her while they took the money.  However, defense counsel did not mention larceny by trick in closing arguments: counsel argued that the petitioner was guilty, at most, of larceny from a building.  Moreover, the evidence did not support a theory consistent with larceny by trick.  The Court concludes that the petitioner's rights under the Due Process Clause were not violated by the trial court's refusal to instruct the jury on the lesser included offense of larceny by trick in his trial for armed robbery and felony murder.  The state courts' decisions on the matter were not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.  Therefore, he is not entitled to federal habeas relief on this claim.

## C.

The petitioner alleges next that the prosecutor engaged in misconduct by (1) suggesting that the petitioner's testimony was untruthful, (2) arguing facts not in evidence, (3) misstating the law, (4) vouching for her case, and (5) violating the *Bruton* rule.  The Michigan Court of Appeals determined that the petitioner did not preserve his claim by objecting to the prosecutor's remarks at trial and that the prosecutor's comments were proper.  The respondent does not raise the doctrine of procedural default as a defense to the petitioner's second claim, and the Court will not raise the

-15-

defense *sua sponte*. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Accordingly, the Court will address the merits of the petitioner's claim.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-46 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has prescribed four factors to consider when analyzing such claims: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements "were deliberately or accidentally presented to the jury"; and (4) whether the other evidence against the defendant was substantial. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

On appeal, the Michigan Court of Appeals rejected the petitioner's claims of prosecutorial misconduct, stating:

> Our review of the prosecutor's comments in context indicates that they were proper. Any prejudicial effect could have been cured by an appropriate instruction to the jury. . . . Defendant Doss also argues that the prosecutor used a police witness to improperly vouch for the veracity of a statement that defendant Doss gave to police.

-16-

Our review of the complained-of testimony in context reveals that the prosecutor did not use the police officer's testimony to vouch for the truth of his case.

*People v. Doss*, No. 188066, slip op. at 3.

1.

The prosecutor stated in her closing argument that the two charges against the petitioner were reasons for him to lie. As previously explained, a prosecutor may challenge the credibility of a defendant who testifies in his own defense. *Francis*, 170 F.3d at 552. Having an interest in the outcome of the case or having something to gain or lose from testimony are classic ingredients of bias that commonly are used to impeach witness testimony. When the petitioner testified at trial, he put his credibility in issue like any other witness. Elements of his bias was fair territory for the prosecutor's exploration. Furthermore, the prosecutor's argument merely echoed the jury instruction explaining to the jury one of the factors they should consider as they evaluate the credibility of each witness. The conclusion of the state court of appeals was not contrary to or an unreasonable application of Supreme Court precedent.

2.

The petitioner asserts that the prosecutor argued facts not in evidence. Prosecutors may not misstate the facts or assume prejudicial facts not in evidence. *Berger v. United States*, 295 U.S. 78, 84 (1935). Consistent and repeated misrepresentation of the facts "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Donnelly,* 416 U.S. at 646.

The prosecutor stated in her opening remarks that the victim's baby was crying when the police arrived at the crime scene. The statement of the petitioner introduced at trial indicated that the victim and her child were alone in their house at the time of the shooting. Trial testimony of a neighbor established that the baby was found lying on the victim's chest when the victim was

-17-

discovered.   Although there was no evidence that the baby was crying, the remark was inconsequential, and it had no bearing on any of the issues raised at trial.   The remark adds little to the impact of the fact elicited at trial that the victim was shot in the presence of her small child.   The Court does not believe that the statement prejudiced the petitioner or misled the jury.

The petitioner alleges that the prosecutor falsely stated in her closing argument that the victim permitted the defendants to enter her home *after* a gun was drawn.   According to the petitioner, there was no evidence that the defendants forced their way inside the home at gunpoint.

Taken out of context, the prosecutor's argument does appear to suggest that a gun was drawn when Leawann Coles refused to let the defendants enter her home.   However, the prosecutor explained in the next part of her argument that the gun was drawn after the petitioner entered the home and went downstairs.   This remark was consistent with the petitioner's statement to the police.   Thus, the prosecutor's argument did not prejudice the defendant.

Finally, the petitioner alleges that the prosecutor falsely argued that his brother did not accompany the defendants to the victim's residence because he knew what was going to happen. This argument was a reasonable inference from the facts because the petitioner said in his statement to the police, which was read into the record, that his brother did not want to go to the victim's home because he did not want to get involved.   The prosecutor's argument did not constitute misconduct.

3.

The petitioner alleges that the prosecutor misstated the law and diluted the burden of proof by arguing that felony murder was murder committed during the commission of a felony.   The petitioner contends that the prosecutor's "shorthand definition" violated the holding in *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980).

-18-

In Michigan, the elements of first-degree felony murder are (1) the killing of a human being; (2) with an intent to kill, cause great bodily harm, or create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result, (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute. *People v. Carines*, 460 Mich. 750, 758-59, 597 N.W.2d 130, 136 (1999). The second element, that is, proof of an intent to kill, an intent to do great bodily harm, or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm, *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996) (citing *Aaron*, 409 Mich. at 733; 299 N.W.2d at 329 (1980)), is commonly referred to as "malice." The facts and circumstances surrounding a killing can give rise to an inference of malice, and a jury may infer malice from evidence that a defendant intentionally set into motion a force likely to cause death or great bodily harm. *People v. Dykhouse,* 418 Mich. 488, 494, 345 N.W.2d 150 (1984). Intent to commit the underlying felony alone does not constitute a sufficient *mens rea* to establish the crime of murder. *Aaron*, 409 Mich. at 728, 299 N.W.2d at 326.

The prosecutor's short definition of felony murder was literally correct, since a killing without malice is not "murder." In addition, the prosecutor explained the state of mind needed to be found guilty of felony murder, to-wit, the state of mind that renders a killing a murder (i.e. malice), and the commission of a felony that raises the murder to first-degree murder. Most importantly, the trial court gave a proper definition of felony murder and emphasized its superior role in stating the law the jury must apply, arguments of counsel notwithstanding.

-19-

The petitioner also criticizes the prosecutor's closing argument directed to the lesser offense of larceny in a building, believing that she contends that a house is not a building within the meaning of the larceny-in-a-building statute.  Under Michigan law,

> [t]he elements of larceny in a building are: (1) the actual or constructive taking of goods or property of another, (2) without the consent and against the will of the owner, and (3) a carrying away or asportation of the goods, (4) with a felonious intent, (5) the taking having occurred within the confines of the building.

*People v. Randolph*, 466 Mich. 532, 552 n.25, 648 N.W.2d 164, 175 n.25 (2002).  A house is a "building" within the meaning of the statute.  Mich. Comp. Laws § 750.360 (stating that "[a]ny person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony").

However, the prosecutor argued:

> This is an Armed Robbery.  It has nothing to do with Larceny in a Building.  This is a house, it's not a building, it's not a warehouse.  It's a house that a woman lives in with her child . . . .

Tr. III, at 631.  The context of the statement suggests that the prosecutor was trying to emphasize the distinction between armed robbery and larceny in a building.  Although the statements appear to imply that the crime could not be larceny in a building because the crime occurred in a house and a house is not a building, she subsequently urged the jurors to follow the law as given to them by the trial court.  The trial court later said that its duty was to explain the applicable law, and if a lawyer said something different about the law, the jurors should follow the court's instructions.  The trial court also made it clear that larceny in a building applies to dwelling houses.  This Court

-20-

concludes that the prosecutor's arguments did not deprive the petitioner of a fair trial or dilute the burden of proof.

4.

The petitioner alleges that the prosecutor vouched for her case by prefacing her arguments with the phrase "we know." The petitioner contends that the phrase "we know" implied that the prosecutor and the police knew facts that were not made known to the jury.

A prosecutor generally may not convey her personal opinion regarding the defendant's guilt or the credibility of witness testimony, but she may argue that the jury should reach a particular conclusion based on certain evidence. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). The Sixth Circuit Court of Appeals has explained:

> Courts frown upon such statements for two reasons: 'such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.' *United States v. Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985); *see also Caldwell*, 181 F.3d at 737 (stating that personal appeals exceed 'the legitimate advocate's role by improperly inviting the jurors to convict the defendants on a basis other than a neutral independent assessment of the record proof').

*Gall v. Parker*, 231 F.3d 265, 312 (6th Cir. 2000).

Although on direct review the Sixth Circuit has expressed disapproval of the phrase "we know," *see United States v. Ebens*, 800 F.3d 1422, 1441 (6th Cir. 1986), habeas relief has seldom, if ever, been granted by the Sixth Circuit on the basis of improper vouching. *See Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (noting that the court had "not discovered, nor have the parties directed us, to any cases in which we have granted habeas relief on the basis of improper vouching. The few cases in which vouching provided a basis for relief were in the context of a direct appeal

-21-

where we exercise supervisory power over the federal trial court proceeding. Even on direct appeal, however, reversal is not automatic"). *But see Bates v. Bell*, 402 F.3d 635, 646, 649 (6th Cir 2005) (including vouching among several improper arguments by the prosecutor at the penalty phase of a capital case as the basis for habeas relief). Moreover, vouching is harmless error when the evidence against a defendant is otherwise strong. *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001) (citing *United States v. Fullerton*, 187 F.3d 587, 592 (6th Cir. 1999)).

In her closing argument, the prosecutor stated that "we know" from medical testimony and the petitioner's statement to the police that (1) the gun was positioned six to eight inches from the victim's head at least twice, (2) the victim was in fear, (3) the petitioner took money or property that did not belong to him, (4) the money or property was taken from the victim's presence, and (5) drugs with a street value, as well as camera equipment, were taken from the victim's home. This argument was supported by the evidence produced at trial. The prosecutor did not express her personal opinion of the petitioner's guilt or innocence or suggest that she knew something that the jurors did not know. Rather, the "we" in the prosecutor's argument fairly can be understood to include the jurors within the scope of knowledge derived from the facts assembled in court during the trial. Therefore, these statements did not deprive the petitioner of a fair trial.

5.

The petitioner's final claim about the prosecutor is that she violated the holding in *Bruton v. United States*, 391 U.S. 123 (1968), by suggesting during *voir dire* that people sometimes try to deflect guilt by blaming someone else. "The [Supreme] Court held in *Bruton* that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant."

-22-

*Schneble v. Florida*, 405 U.S. 427, 429-30 (1972). This rule was not violated at the petitioner's trial. The petitioner and his co-defendant had separate juries and the co-defendant's statement, which accused the petitioner of being the shooter, was not admitted in the petitioner's case before his jury.

The Court concludes that the prosecutor's remarks were not improper and did not infect the petitioner's trial with such unfairness as to make the resulting conviction unsound. Therefore, the state court's conclusion that the prosecutor's remarks were proper was not contrary to or an unreasonable application of Supreme Court precedent.

D.

The fourth habeas claim alleges that the petitioner was deprived of due process of law because the evidence was insufficient to convict him of first-degree felony murder. According to the petitioner, the State failed to prove that he shared the principal defendant's intent to kill Leawann Coles.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324

-23-

n.16.  A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The petitioner argues that the evidence was insufficient to establish the intent element of first-degree felony murder.  The elements of first-degree felony murder in Michigan are noted above. *See Carines*, 460 Mich. at 758-59, 597 N.W.2d at 136.  Robbery is a felony enumerated in the statute.  *See* Mich. Comp. Laws § 750.316(1)(b).

Plainly, the State must prove malice apart from the underlying felony itself to establish the crime.  *Aaron*, 409 Mich. at 733, 299 N.W.2d at 329 (1980); *see also Weiner v. Bock*, 387 F. Supp. 2d 717, 721-23 (E.D. Mich. 2005).  The facts and circumstances surrounding a killing can give rise to an inference of malice, a jury may infer malice from evidence that a defendant intentionally set into motion a force likely to cause death or great bodily harm, and the circumstances of the underlying felony can furnish proof of malice.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 34 (1997); *Dykhouse,* 418 Mich. at 494, 345 N.W.2d at 151.

The Michigan Court of Appeals summarized the evidence of malice in this case as follows:

> Defendant Doss' statement to police indicated that he knew that defendant Little planned an armed robbery and that Terrance Coles was a drug dealer who supposedly had $156,000 in cash in his house.  Defendant Doss also knew that Mr. Coles knew Little because Little said he had helped Mr. Coles count out that cash.  Defendant Doss also knew that Mrs. Coles knew Little because he went to the door with Little and watched him speak with Mrs. Coles before they dropped off the fake package of guns.  After the robbery, Mrs. Coles was shot several times at very close range.  The jury could easily infer that anyone who planned to rob a drug dealer of $156,000 would be unlikely to leave behind any witnesses who could identify him.  Even if defendant Doss himself had not intended to kill Mrs. Coles, he wantonly and willfully disregarded the likelihood that his aiding and abetting the robbery would have the natural tendency to cause Mrs. Coles death or great bodily harm because he knew that Little would be highly motivated not to leave behind any witnesses who could identify him.

-24-

*People v. Doss*, No. 188066, slip op. at 4.  The court of appeals determined that "a rational trier of fact could conclude that the required intent for felony murder had been proven in defendant Doss' case beyond a reasonable doubt." *Id*.

Michigan courts have had little difficulty finding malice as an element of murder from evidence that a defendant voluntarily participated in robbing a victim using a firearm, even though that defendant was not the actual shooter.  *See, e.g., People v. Hart*, 161 Mich. App. 630, 411 N.W.2d 803 (1987) (finding that the defendant's involvement in a robbery where a gun was involved showed wanton and wilful disregard of the likelihood that his behavior would cause death or serious bodily injury); *People v. Turner,* 213 Mich. App. 558, 572-573, 540 N.W.2d 728, 735 (1995), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001) (finding evidence of malice where the defendant knew that the co-defendant was armed during the commission of the armed robbery in which the co-defendant killed the victim).

In the present case, the evidence established that the victim was shot and killed during an armed robbery that the petitioner executed with the co-defendant.  When viewed in a light most favorable to the prosecution, the evidence would enable a rational trier of fact to conclude that the petitioner acted with the malice required to sustain a first-degree felony murder conviction because he participated in a robbery in which he knew a firearm would be used.  The state court's conclusion that the prosecution proved the requisite intent  was objectively reasonable, and it is supported by the record.  Therefore, the petitioner is not entitled to habeas relief on the basis of his fourth claim.

E.

The fifth habeas claim alleges that the trial court erred when it failed to suppress the petitioner's statement to the police.  The petitioner asserts that his statement was not the product of

-25-

free will because he was hungry, tired, and undergoing withdrawal symptoms from heroin use. He also claims that he made his statement before the police advised him of his constitutional rights and he was influenced by a false promise not to charge him.

The petitioner testified at the pretrial hearing that he was intoxicated when the police interrogated him. He also testified that the police (1) promised not to charge him if he gave a statement, (2) told him that Michael Little would implicate him on first-degree murder charges, and (3) did not advise him of his constitutional rights until after he made a statement. The petitioner was 39 years of age at the time, and he had earned the equivalent of a high school diploma. He also had prior experience in the criminal justice system. Investigator William Petersen testified that he advised the petitioner of his constitutional rights before he took the statement, the petitioner did not appear to be intoxicated or under the influence of narcotics, and he did not make any promises to elicit the statement.

The trial court determined that the petitioner's testimony was wholly incredible, self-serving, and unworthy of belief, and Sergeant Petersen's testimony was wholly credible and trustworthy. The state appellate court upheld the trial court's decision, explaining:

> Defendant Doss argues that the trial court erred by refusing to suppress the statement he made to police. Defendant Doss claims his statement was involuntary because he "was intoxicated and high on heroin," had been promised that he would not be charged if he gave a statement, and was advised of his rights only after he gave the statement. This issue involves a credibility contest between defendant Doss and Detroit Police Sergeant William Petersen, the police officer who interviewed him. Petersen testified that Doss appeared relatively healthy and did not appear intoxicated, that Doss was advised of his rights around 6:30 PM (about 1 and ½ hours before he gave his statement), and that Doss was not made any promises in exchange for his statement. The trial court found defendant Doss' testimony wholly incredible, self-serving, and not worthy of belief. That defendant Doss lacked credibility is apparent from a simple review of the record. Although defendant Doss claimed he was not advised of his rights, he signed and initialed an advice of rights form. Defendant Doss was not questioned until over eight hours after he claimed to

-26-

have last used heroin.  The trial court properly found that defendant Doss' statement
was voluntary and denied his motion to suppress.  *People v. Cipriano,* 431 Mich.
315, 334; 429 N.W.2d 781 (1988).

*People v. Doss,* No. 188066, slip op. at 5.  The state courts resolved the credibility issue against the

petitioner.  These factual findings that the police did not engage in the tactics alleged by the

petitioner are entitled to a presumption of correctness unless the petitioner can rebut them with clear

and convincing evidence.  28 U.S.C. § 2254(e)(1).

The petitioner has filed a motion to file supplemental authority in this Court in which he sets

out allegations that two members of the Detroit Police Homicide Unit engaged in improper

interrogation techniques and these improper techniques were part of the official policy of the

Homicide Unit.  The petitioner also argues that his statement was involuntary because the police

extracted a confession from him before reading him the *Miranda* warnings, then went over the

statement a second time, in violation of the holding in *Missouri v. Seibert*, 542 U.S. 600 (2004)

(plurality opinion).

The "new evidence" of corruption in the police department does not entitle the petitioner to

habeas corpus relief.  This "new evidence" suggests that an Officer Ghougoian had engaged in

improper interrogation practices.  Because the allegations of the misconduct of Officer Ghougoian

are not specific to the petitioner's case, he has failed to rebut the state courts' factual determinations

by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  The petitioner asserts that his right

under the Confrontation Clause was violated because Officer Ghougoian was not produced at trial

and the petitioner had no opportunity to confront her.  However, no statement taken by Officer

Ghougoian was introduced as evidence against him.

Furthermore, this Court must afford the presumption of correctness to the state courts' determination at the *Walker* hearing that the petitioner was informed of his *Miranda* rights before he gave the statement. *Missouri v. Seibert* is not helpful to the defendant. In that case, a plurality of the Supreme Court held unconstitutional a police interrogation technique in which the police extracted a confession from a suspect, then informed her of her *Miranda* rights before going over the statement with her a second time. The petitioner's account of the events of his interrogation are decidedly different: at the *Walker* hearing, the petitioner testified under oath that he was never informed of his *Miranda* rights and signed his police statement at the same time that he signed and initialed the *Miranda* rights form. The trial court concluded that the petitioner's testimony was not credible.

The conclusion of the state courts that the petitioner's statement was made voluntarily was entitled to a presumption of correctness and the petitioner's arguments do not rebut this presumption with clear and convincing evidence. Therefore the petitioner has no right to habeas relief on the basis of this claim.

### F.

The petitioner's sixth habeas claim alleges that the petitioner was denied his constitutional right to due process of law because the police delayed his arraignment in violation of the Fourth Amendment in order to extract an incriminating statement and additional information that would justify the arrest. The petitioner's seventh claim characterizes the sixth claim as a challenge to the jurisdiction of the state trial court and asserts that appellate counsel was ineffective for failing to raise the claim on appeal.

-28-

The State argues that these claims are procedurally defaulted because, although the petitioner raised both claims in a post-conviction motion, both the Michigan Court of Appeals and the Michigan Supreme Court ruled that the petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Doss*, No. 119316 (Mich. Nov. 30, 2001); *People v. Doss*, No. 230461 (Mich. Ct. App. Apr. 27, 2001). The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state-procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state-procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

-29-

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a Michigan court may not grant relief upon a motion for relief from judgment if the grounds for relief in the motion could have been raised on appeal from the conviction or in a prior motion. *See* Mich. Ct. R. 6.508(D). The Sixth Circuit Court of Appeals has held that Rule 6.508(D) is an independent and adequate ground for procedural default. *Howard*, 405 F.3d at 477; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

It also appears that the Michigan courts actually enforced the procedural rule in this case. The Sixth Circuit has interpreted a form order denying a motion for relief from judgment, such as the one issued by the Michigan Court of Appeals and the Michigan Supreme Court in this case, as an "explained" state court judgment denying the motion for relief from judgment on a procedural ground. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004); *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000). Such interpretation of the form order is somewhat troublesome in this case, however, where the petitioner's claim of ineffective assistance of appellate counsel is not procedurally defaulted pursuant to Michigan Court Rule 6.508(D) because it does not fit within the three grounds upon which a court may deny relief. *See Munson*, 384 F.3d at 315 n.2.

The question remains whether the petitioner failed to comply with the procedural rule. *See Howard*, 405 F.3d at 477-78. The petitioner argues that his claim is not barred by Michigan Court Rule 6.508(D)(3) because it is a jurisdictional claim. *See* Mich. Ct. R. 6.508(D)(3) (stating that "[t]he court may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter . . ."). However, the petitioner does not cite any authority that supports the proposition that this Fourth Amendment claim is jurisdictional in nature,

particularly in light of the trial court's determination that the petitioner received a timely probable

cause determination following his warrantless arrest.  Specifically, the trial court stated:

> [D]efendant contends that he was not brought before a court within 48 hours after a
> warrantless arrest.  The defendant supports his argument by using [*County of*]
> *Riverside v. McLaughlin*, 500 U.S. 44; 111 S. Ct. 1661; 114 L. Ed. 2d 49 (1991).
> Defendant's argument[,] however, is without merit.  The Court in *Riverside*, *supra*,
> did not find that there must be an arraignment within 48 hours after a warrantless
> arrest.  Instead it found that it is "presumptively unreasonable" to hold a citizen in
> custody for longer than 48 hours without a judicial determination on probable cause.
> In this case, the record supports a finding that a magistrate[,] upon finding probable
> cause, signed an arrest warrant approximately 48 hours after his arrest.

*People v. Doss*, No. 94-008342 (Mich. 3d Jud. Cir. Ct. Sept. 22, 2000).  The petitioner does not

present evidence or argument contrary to this conclusion.

In fact, it is clear from the trial court's opinion and the record that the petitioner's Fourth

Amendment claim is without merit.  The petitioner was arrested on July 20, 1994, and a warrant was

issued on July 22, 1994 approximately forty-eight hours later.  The United States Court of Appeals

for the Sixth Circuit has explained that the Fourth Amendment

> requires a "fair and reliable determination of probable cause," which must be made
> promptly after a warrantless arrest. *Gerstein v. Pugh*, 420 U.S. 103, 125, 43 L. Ed.
> 2d 54, 95 S. Ct. 854 (1975).  A judicial determination of probable cause within
> forty-eight hours of arrest, "will, as a general matter, comply with the promptness
> requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 114
> L. Ed. 2d 49, 111 S. Ct. 1661 (1991).  If the probable cause hearing is not held within
> forty-eight hours, the burden shifts to the government "to demonstrate the existence
> of a *bona fide* emergency or other extraordinary circumstance." *Id*. at 57.  The
> Supreme Court specifically mentioned that intervening weekends do not count as an
> "extraordinary circumstance." *Id*.  On the other hand, if the defendant is held on a
> valid warrant, he "is not constitutionally entitled to a separate judicial determination
> that there is probable cause to detain him pending trial." *Baker v. McCollan*, 443
> U.S. 137, 143, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979).

*Alkire v. Irving*, 330 F.3d 802, 813-14 (6th Cir. 2002). The petitioner alleges that he was arrested

without a warrant on July 20, 1994, and arraigned before a magistrate on July 24, 1994.  However,

as the trial court pointed out, the magistrate found probable cause and signed an arrest warrant approximately forty-eight hours after the petitioner's arrest. *See* Recorder's Court Journal, entries 1 & 2. Because the petitioner was held on a valid warrant, he was not entitled to a separate judicial determination on whether there was probable cause to detain him pending trial. *See Baker v. McCollan*, 443 U.S. 137, 143 (1979). The petitioner's arrest and subsequent detention did not violate the Fourth Amendment.

Because this claim is without merit, the petitioner's appellate counsel was not ineffective for failing to raise it on appeal. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). The Court need not determine if the petitioner was prejudiced by the alleged violation of the Fourth Amendment because he has not established "cause" for his state procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

The Court concludes that the petitioner is not entitled to relief on his sixth and seventh claims because they are procedurally defaulted and without merit.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED.**

It is further **ORDERED** that the petitioner's motion to file supplemental authority [dkt # 21] is **GRANTED**.

Dated: March 14, 2006                    s/David M. Lawson
                                         DAVID M. LAWSON
                                         United States District Judge

-32-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 14, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS